1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                       ----oo0oo----

11  UNITED STATES OF AMERICA,
                                    NO. CIV. 92-1 WBS
12          Plaintiff,

13      v.                          MEMORANDUM AND ORDER RE:
                                    MOTION TO WITHDRAW GUILTY PLEA
14  DONELL HATCHER,

15          Defendant.
    _____/
16                       ----oo0oo----

17

18          On June 2, 1993, defendant Donell Hatcher pled guilty

19  to possession with intent to distribute 445 grams of heroin in

20  violation of 21 U.S.C. § 841(a)(1).  Before sentencing, defendant

21  absconded from the jurisdiction until his subsequent arrest in

22  2006.  Defendant now moves to withdraw his guilty plea pursuant

23  to Federal Rule of Criminal Procedure 11(d)(1)(B).

24  I.   Factual and Procedural Background

25          On August 27, 1992, the grand jury returned a Second

26  Superseding Indictment ("SSI") charging defendant and other

27  individuals with narcotics and firearm offenses.  (Docket No.

28  383.)  On October 23, 1992, defendant was released on bond by the

                                    1

posting of property located at 659 Broadway in Venice, California.  (See id. No. 476.)

Defendant subsequently filed a "Motion to Suppress Statements" and joined a "Motion to Suppress Wiretap Statements." (See id. Nos. 342, 725.)  The Motion to Suppress Statements was taken under submission, and an evidentiary hearing on the Motion to Suppress Wiretap Statements began on May 26, 1993, and was continued to June 2, 1993.  (Id. No. 1122.)  Rather than proceed with the evidentiary hearing on that date, however, defendant informed the court through his attorney that he wished to enter a plea of guilty to Count Eight of the SSI pursuant to a plea agreement.  (See id. Nos. 1140-1142, 1146.)  That count alleged a violation of 21 U.S.C. 841(a)(1), possession with intent to distribute 445 grams of heroin.  The court held a change-of-plea hearing and accepted defendant's guilty plea.

Following the change-of-plea hearing, the parties stipulated to a court-ordered modification of defendant's conditions of release to eliminate electronic monitoring, which was entered on June 11, 1993.  (See id. No. 1147.)  However, on September 30, 1993, the Government moved to revoke defendant's release, and a bench warrant for defendant's arrest was issued on October 1, 1993.  (Id. Nos. 1320-1321.)  Defendant remained a fugitive until he was arrested in 2006 in connection with a narcotics case in the Northern District of Alabama.

On August 12, 2008, defendant filed a motion to withdraw the guilty plea that he entered on June 2, 1993.  A subsequent motion was filed on May 1, 2009, which incorporated the arguments presented in his earlier motion along with

additional grounds for relief.  The court then held an

evidentiary hearing on these motions on May 27, 2009, to receive

testimony from defendant and defendant's attorney at the time of

his guilty plea, James Larson.

II.  <u>Discussion</u>

Federal Rule of Criminal Procedure 11(d)(1)(B) provides

that a defendant may withdraw a plea of guilty prior to the

imposition of sentence if he or she "can show a fair and just

reason for requesting the withdrawal."  While the "fair and just"

standard is "generous and must be applied liberally," a defendant

cannot be permitted to withdraw his guilty plea "simply on a

lark."  <u>United States v. McTiernan</u>, 546 F.3d 1160, 1167 (9th Cir.

2008) (quoting <u>United States v. Hyde</u>, 520 U.S. 670, 676-77

(1997)).  "The defendant has the burden to show a fair and just

reason for withdrawal of a plea."  <u>United States v.</u>

<u>Ortega-Ascanio</u>, 376 F.3d 879, 883 (9th Cir. 2004) (quoting <u>United</u>

<u>States v. Nostratis</u>, 321 F.3d 1206, 1208 (9th Cir. 2003)).

In the Ninth Circuit, "fair and just" reasons for

withdrawal "include inadequate Rule 11 plea colloquies, newly

discovered evidence, intervening circumstances, or any other

reason for withdrawing the plea that did not exist when the

defendant entered his plea."  <u>McTiernan</u>, 546 F.3d at 1167

(quoting <u>United States v. Davis</u>, 428 F.3d 802, 805 (9th Cir.

2005)) (emphasis omitted).  "Erroneous or inadequate legal advice

may also constitute a fair and just reason for plea withdrawal,

even without a showing of prejudice, when the motion to withdraw

is made presentence."  <u>Id.</u> (citing <u>Davis</u>, 428 F.3d at 806).

Nonetheless, "[a]lthough procedural errors and intervening

3

circumstances are commonly raised as grounds for withdrawal, each case must be reviewed in the context in which the motion arose to determine whether, ultimately, a 'fair and just' reason exists." Id.

The context in which the motion arises here, of course, includes the sixteen year delay occasioned by defendant's unlawful absconding from the jurisdiction of the court. See, e.g., United States v. Nostratis, 321 F.3d 1206, 1211 (9th Cir. 2003) ("[T]he time between the plea and the plea withdrawal motion is a factor to consider in ruling on that motion." (citing Fed. R. Crim. P. 32 advisory committee notes)). Although delay is sometimes instructive as to the credence a court should give to a defendant's reasons for withdrawal, see Navarro-Flores, 628 F.2d at 1184, such delay will also "inform another factor that courts take into account, whether the plea withdrawal will prejudice the government." 1A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Criminal § 181 (3d ed. 2009) (collecting cases); see United States v. Vasquez-Velasco, 471 F.2d 294, 294-95 (9th Cir. 1973) (per curiam); United States v. Del Valle-Rojas, 463 F.2d 228, 229 (9th Cir. 1972) (per curiam).

As the United States Attorney related at the evidentiary hearing, locating evidence and witnesses in order to prepare this case for trial at this late date would pose a significant hardship to the government. A defendant should not be allowed directly to benefit from his own deliberate decision to flaunt the court's orders, become a fugitive from justice, and evade just punishment for his crime. Where, as here, the court

has broad discretion to determine whether the withdrawal of a plea is "fair and just," it is incumbent upon the court to maintain not only the solemnity of a guilty plea in particular but also respect for the law in general.

Here, defendant proffers the following reasons to support the withdrawal of his guilty plea: (1) the court did not inform him of the elements of the charge; (2) he was coerced and under duress when he entered his guilty plea; (3) his plea agreement violates Apprendi v. New Jersey, 530 U.S. 466 (2000); (4) he mistakenly believed that his plea was conditional, i.e., that he could continue to litigate issues raised in his suppression motions; and (5) his attorney incorrectly guaranteed him a five year sentence.  (Docket No. 2000 ("Mot. Withdraw") 2:1-7.)

As to defendant's first contention, Federal Rule of Criminal Procedure 11 requires the court to inform a defendant of "the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G).  Rule 11's requirement that the court explain the nature of each charge is intended to ensure that "the defendant thoroughly understands that if he pleads 'not guilty' the State will be required to prove certain facts,[] thus permitting the defendant to make an intelligent judgment as to whether he would be better off accepting the tendered concessions or chancing acquittal." United States v. Minore, 292 F.3d 1109, 1116 (9th Cir. 2002) (quoting Wayne R. LaFave et al., 5 Criminal Procedure § 21.4(c) (2d ed. 1999)).  In a recent opinion, the Ninth Circuit expressly declined to determine "whether Rule 11[] requires the district court to advise the defendant of every

element of the offense," although that opinion did hold that the Constitution only requires that a defendant "be informed of the 'critical' elements of the offense." <u>Id.</u> at 1116 & n.5 (9th Cir. 2002).

At defendant's Rule 11 colloquy, the following exchange occurred regarding the nature of the offense to which defendant pled guilty:

> **THE COURT:** DO YOU UNDERSTAND THE NATURE OF THE CHARGES AGAINST YOU?
>
> **[DEFENDANT]:** YES.
>
> **THE COURT:** TELL ME WHAT YOU UNDERSTAND THEM TO BE.
>
> **[DEFENDANT]:** TITLE--EXCUSE ME . . . TITLE 21, SECTION 841 . . . POSSESSION WITH INTENT TO DISTRIBUTE FOUR HUNDRED AND FORTY-FIVE GRAMS OF 25 PERCENT HEROIN.
>
> **THE COURT:** NOW, THE GRAND JURY CHARGES THAT ON OR ABOUT DECEMBER 21, 1991, IN THE STATE AND NORTHERN DISTRICT OF CALIFORNIA, DONELL HATCHER DID KNOWINGLY AND INTENTIONALLY POSSESS WITH INTENT TO DISTRIBUTE, AND DID AID AND ABET THE POSSESSION WITH INTENT TO DISTRIBUTE, HEROIN, A SCHEDULE I NARCOTIC CONTROLLED SUBSTANCE, LISTED IN TITLE 11, UNITED STATES CODE, SECTION 812, IN VIOLATION OF TITLE 21, UNITED STATES CODE, SECTION 841(A)(1), AND TITLE 18, UNITED STATES CODE, SECTION 2.
>
> NOW, DO YOU UNDERSTAND--NOW, ARE THOSE THE CHARGES TO WHICH YOU WISH YOU PLEAD GUILTY?
>
> **[DEFENDANT]:** YES.

(Mot. Withdraw Ex. B ("Rule 11 Tr.") 22:18-23:11.) The court also asked defendant, "[D]o you understand that in a jury trial you may not be found guilty unless and until all twelve jurors are satisfied of your guilt beyond a reasonable doubt?," to which defendant responded, "Yes." (<u>Id.</u> 29:4-7.)

1    In his motion, defendant does not claim that he was
2  unaware of an element of the charge against him or that the Rule
3  11 colloquy failed to dispel some misapprehension of the offense.
4  Rather, he simply asserts that the court "should have used, for
5  example, the Ninth Circuit Model Criminal Jury Instruction, which
6  clearly lays out the elements of the offense." (Mot. Withdraw
7  4:5-8.)

8    Although the Ninth Circuit has not determined whether
9  Rule 11 requires a district court to recite each element of an
10 offense, <u>Minore</u>, 292 F.3d at 1116 n.5, the Ninth Circuit has
11 indicated that "in a non-complex case, a reading of the
12 indictment <u>may</u> suffice." <u>United States v. Kamer</u>, 781 F.2d 1380,
13 1384 (9th Cir. 1986) (citing <u>United States v. Punch</u>, 709 F.2d
14 889, 892-94 (5th Cir. 1983); <u>United States v. Dayton</u>, 604 F.2d
15 931, 939 (5th Cir. 1979)).  In that opinion, the Ninth Circuit
16 instructed that

17       the sufficiency of any particular colloquy between the
         judge and the defendant as to the nature of the charges
18       will 'vary from case to case, depending on the peculiar
         facts of each situation, looking to both the complexity
19       of the charges and the personal characteristics of the
         defendant, such as his age, education, intelligence, the
20       alacrity of his responses, and also whether he is
         represented by counsel.
21

22 <u>Id.</u> (quoting <u>United States v. Wetterlin</u>, 583 F.2d 346, 351 (7th
23 Cir. 1978)).

24       Here, the single count to which defendant pled guilty
25 was far from complex; as illustrated by the model jury
26 instruction proffered by defendant, the offense only contains two
27 elements, both of which were contained in the court's reading of
28 the SSI during the Rule 11 colloquy.  (<u>See</u> Mot. Withdraw 4:8-21.)

At the time of the colloquy, moreover, defendant was twenty-seven years old and had completed three years of college at the University of Hawaii.  (Rule 11 Tr. 21:19-22:1.)  Defendant was represented by attorney James Larson before and during the Rule 11 colloquy, whom Judge William Orrick--the district judge that conducted defendant's Rule 11 colloquy--described as "one of the best constitutional lawyers in our courts."  (Id. at 25:1-2.)  Defendant also participated in the hearing with as much "alacrity" as one could expect under the circumstances.  Indeed, with little prompting, defendant recited the statutory provision under which he was charged; when the court asked him why he was pleading guilty, defendant responded, "Basically, the evidence, the facts, and everything.  I see basically I could end up . . . worse off if I go to trial."  (Rule 11 Tr. 28:1-3.)

Importantly, in his motion, defendant does not explain how the recitation of the model jury instruction would have elucidated the charge against him or otherwise affected his decision to plead guilty;[1] aside from certain descriptive

---

[1]   Indeed, in his original motion to withdraw his guilty plea filed on August 12, 2008, defendant makes no mention of this argument.  (See Docket No. 1968.)  In his reply, defendant further states, "Defendant is not saying a Federal District Court Judge must read jury instructions to be a valid Rule 11 colloquy . . . .  Frankly, defendant admits that compared to some cases where, for example, no facts were put on the record to provide a basis for the guilty plea, this case now before this Court is a close call."  (Reply 3:18-21.)
   Furthermore, at the evidentiary hearing on defendant's motion to withdraw his guilty plea, defendant did not offer any testimony supporting the contention that he did not understand the nature of the charge against him at the time he pled guilty.  In response to repeated questions from the Government, defendant affirmed that he knew the nature of the offense, but that he purportedly believed that he would not receive a sentence of more than five years and that the Government would not prove

8

embellishments, the court cannot discern any element of the
offense contained in the proffered jury instruction that was not
stated in defendant's Rule 11 colloquy.  The jury instruction
describes the two elements comprising defendant's offense as
follows:

> First, the defendant knowingly possessed [a controlled
> substance] in a measurable or detectable amount; and
>
> Second, the defendant possessed it with the intent to
> deliver it to another person. It does not matter whether
> the defendant knew that the substance was [a controlled
> substance].  It is sufficient that the defendant knew
> that it was some kind of prohibited drug.
>
> To "possess with intent to distribute" means to possess
> with intent to deliver or transfer possession of a
> controlled substance to another person, with or without
> any financial interest in the transaction.

(Mot. Withdraw 4:11-21.)  Both of these elements were stated in
the court's reading of the indictment, and the additional
description contained in the proffered instruction would appear
to reinforce, rather than dispel, the futility of trial expressed
by defendant during the colloquy.  Accordingly, for the forgoing
reasons, defendant's criticism of his Rule 11 colloquy fails to
establish a "fair and just" reason to permit withdrawal of his
guilty plea.

Defendant's second ground for the withdrawal of his
guilty plea is his contention that he entered his plea under
duress.  Defendant specifically refers to the following exchange
during his Rule 11 colloquy:

---

additional quantities of heroin at sentencing.

| | | |
|---|---|---|
| **THE COURT:** | | NOW, IN CONNECTION WITH ANY INTERROGATION OR QUESTIONING THAT YOU'VE UNDERGONE, HAVE YOU BEEN FULLY ADVISED OF YOUR CONSTITUTIONAL RIGHTS? |
| **[DEFENDANT]:** | | YES. |
| **THE COURT:** | | AND IN CONNECTION WITH ANY STATEMENT OR CONFESSION YOU MAY HAVE MADE WAS ANY VIOLENCE OR PHYSICAL OR MENTAL DURESS EXERCISED UPON YOU? |
| **[DEFENDANT]:** | | YEAH.  SOMEWHAT MENTAL DURESS. |
| **THE COURT:** | | SOMEONE THREATENED YOU? |
| **[DEFENDANT]:** | | NO.  MAYBE I HAVE THE DEFINITION WRONG. |
| **THE COURT:** | | NO--NOBODY HAS THREATENED YOU PHYSICALLY OR-- |
| **[DEFENDANT]:** | | NO. |
| **THE COURT:** | | ALL RIGHT. |

(Rule 11 Tr. 26:18-27:10.)  Although the court clarified that no one had physically threatened him, defendant now argues that further inquiry by the court would have revealed that he "felt rushed and under duress" during the colloquy.  (Mot. Withdraw 7:13-14.)

        To support this argument, defendant quotes a portion of the proceedings in which his counsel stated, "[I]t was not until this morning when Mr. Hatcher arrived and he and I conferred about half an hour ago that I was certain that this plea was going to happen."  (Id. at 7:10-12 (quoting Rule 11 Tr. 3:8-10).) Notably, defendant omits the first half of counsel's statement, which reads in its entirety, "Although we've had ongoing discussions about this, between myself and the government, and between myself and my client, it was not until this morning when Mr. Hatcher arrived and he and I conferred about half an hour ago

that I was certain that this plea was going to happen." (Rule 11
Tr. 3:6-10 (emphasis added).) Defendant also fails to note that
the court held a four and one-half hour recess between this first
notification of defendant's intent to plead guilty and the Rule
11 colloquy. (See id. at 15:8 ("PROCEEDINGS RECESSED FROM 9:55
A.M. UNTIL 2:28 P.M.).)

Furthermore, although Larson testified that his present
recollection of the proceedings on June 2, 1993 is "pretty hazy,"
he recalled that he had spoken with defendant on several
occasions regarding the possibility of entering a guilty plea.
He testified that it was his custom and practice to carefully
explain the terms of any plea agreement to a client.  In this
case, he said, that would have included letting the defendant
know there was a possibility of a 10 year to life sentence.
Accordingly, he recalled that he was "surprised" at Hatcher's
choice to plead guilty.  The court finds this testimony to be
sufficiently probative to establish that Larson's conduct and
advice in connection with these proceedings was consistent with
that practice.  See, e.g., Williams v. Raines, 783 F.2d 774, 775
(9th Cir. 1986) (affirming the denial of a claim of ineffective
assistance of counsel where the attorney testified that, while he
"could not specifically remember explaining" the definition of
"malice" to his client, it was his "general practice" to
"explain[] to his clients the elements of the crimes with which
they were charged").

In his plea agreement, defendant "acknowledge[d] that .
. . it [was] his choice to enter into [the plea agreement] and to
plead guilty to Count Eight of the [SSI], and that his guilty

11

plea [was] made freely and voluntarily." (Opp'n Ex. B ("Plea Agreement") ¶ 8.) In defendant's plea application, he also affirmed, "I OFFER MY PLEA OF 'GUILTY' FREELY AND VOLUNTARILY AND OF MY OWN ACCORD AND WITH FULL UNDERSTANDING OF ALL THE MATTERS SET FORTH IN THE INDICTMENT AND IN THIS APPLICATION AND IN THE CERTIFICATE OF MY ATTORNEY THAT IS ATTACHED TO THIS APPLICATION . . . ." (Id. Ex. D ("Plea Application") ¶ 20.) In addition, during the Rule 11 colloquy, the court inquired as follows:

> **THE COURT:** IS THE DECISION TO PLEAD GUILTY YOUR DECISION?
>
> **[DEFENDANT]:** YES.
>
> **THE COURT:** ARE YOU MAKING THIS PLEA FREELY AND VOLUNTARILY, AND AS A RESULT OF YOUR OWN REASONING PROCESSES?
>
> **[DEFENDANT]:** YES.
>
> **THE COURT:** AGAIN, I WANT TO BE ABSOLUTELY SURE. DO YOU UNDERSTAND THAT IF I ACCEPT THIS PLEA THERE WILL NOT BE A FURTHER TRIAL AT ANY TIME, AND DO YOU FURTHER UNDERSTAND YOU WILL NOT BE ENTITLED TO WITHDRAW THIS PLEA OF GUILTY?
>
> **[DEFENDANT]:** YES.

(Rule 11 Tr. 30:20-31:5.)

Although defendant stated during his Rule 11 colloquy that he had "somewhat" experienced "mental duress," this comment fails to undermine the court's determination that defendant's plea was knowing and voluntary when viewed in the context of the entire proceeding. See United States v. Nostratis, 321 F.3d 1206, 1209 (9th Cir. 2003) (rejecting defendant's argument that his guilty plea was not knowing and voluntary where defendant had stated, "I understand, but not hundred percent clearly from my mind," because, when viewed "in context," it was clear that "the

1  court continued to question [the defendant] until it was
2  satisfied that he comprehended the plea agreement").

3          Other than his declaration and his testimony at the
4  evidentiary hearing, defendant has offered no evidence to
5  substantiate his claim of mental duress, a claim which is
6  inconsistent with his responses at the Rule 11 colloquy and other
7  sworn documents relating to his guilty plea.  Under these
8  circumstances, the court cannot conclude that defendant has
9  established a "fair and just" reason to withdraw his plea.  See,
10  e.g., id. at 1210 ("[T]he district court could reasonably have
11  chosen to credit [the defendant's] declarations made in open
12  court while under oath during the Rule 11 hearing over his
13  subsequent testimony more than two years later . . . ."); United
14  States v. Castello, 724 F.2d 813, 815 (9th Cir. 1984) ("The court
15  was entitled to credit [the defendant's] testimony at the Rule 11
16  hearing over her subsequent affidavit.").

17          Defendant next argues that he should be permitted to
18  withdraw his guilty plea because he was unaware that the terms of
19  his plea agreement permitted the Government to argue that he
20  possessed a quantity of heroin equivalent to or exceeding one
21  kilogram, which would increase his range of statutory penalties
22  from a minimum of five years and a maximum of forty years to a
23  minimum of ten years and a maximum of life imprisonment.  (See
24  Mot. Withdraw 6:13-24); 21 U.S.C. § 841(b)(1)(A)(i), (B)(i).
25  Defendant appears to anticipate that the Government will "try to
26  pin him on a significantly larger amount of drugs" at sentencing
27  in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000), and
28  asserts that had he known of this possibility, he "would never

1  have admitted that he possessed 445 grams of heroin." (Mot.

2  Withdraw 6:22-24.)

3          First, defendant's purported ignorance of the

4  possibility that the Government could seek the higher penalty

5  range is belied by the record.  In his plea agreement, defendant

6  was advised that, "[d]epending on the quantity of narcotics found

7  by the Court at sentencing, Count Eight of the [SSI] carries <u>one</u>

8  <u>of two possible penalty ranges</u>: (1) a mandatory minimum of 5

9  years to 40 years imprisonment . . . ; or (2) 10 years to life

10 imprisonment . . . ." (Plea Agreement ¶ 3 (emphasis added).)

11 During the plea colloquy, the court also questioned defendant as

12 follows:

13     **THE COURT:**     AND DO YOU UNDERSTAND THAT THE MAXIMUM
                         POSSIBLE PENALTY--PENALTIES PROVIDED BY
14                       LAW, AND TO WHICH THE COURT MAY SENTENCE
                         YOU ARE, <u>DEPENDING ON THE QUANTITY OF</u>
15                       <u>NARCOTICS FOUND BY THE COURT AT</u>
                         <u>SENTENCING</u>, THE--COUNT EIGHT OF THE
16                       [SSI], WHICH I HAVE JUST READ, CARRIES
                         ONE OF TWO POSSIBLE PENALTY RANGES.

17
                         THE FIRST RANGE IS A MANDATORY MINIMUM OF
18                       FIVE    YEARS    TO    FORTY    YEARS    OF
                         IMPRISONMENT, A FINE OF UP TO TWO MILLION
19                       DOLLARS, AND A TERM OF SUPERVISED RELEASE
                         OF FOUR YEARS TO LIFE.

20
                         <u>OR</u> TEN YEARS TO LIFE OF IMPRISONMENT, A
21                       FINE OF FOUR MILLION DOLLARS, AND A TERM
                         OF SUPERVISED RELEASE FROM FIVE YEARS TO
22                       LIFE.

23                       PLUS A FIFTY-DOLLAR PENALTY ASSESSMENT.

24     **[DEFENDANT]:**  YES.

25 (Rule 11 Tr. 23:12-24:1 (emphasis added).)

26          Second, the Government submits that it has no intention

27 to argue that, for purposes of defendant's statutory penalty

28 range, he possessed more than 445 grams of heroin.  (Opp'n 21:5-

14

8.)  That is the amount to which defendant, repeatedly at the
hearing, acknowledged he understood he was admitting at the time
of his plea.  As a result, the spectre of an Apprendi violation
proffered by defendant in support of his motion is effectively a
red herring.  Accordingly, this line of argument also fails to
establish a "fair and just" reason to permit defendant to
withdraw his guilty plea.

          In his remaining arguments, defendant contends that his
attorney incorrectly advised him regarding certain aspects of the
plea agreement with the Government.  First, defendant asserts
that he was "misinformed" regarding the rights that he waived by
pleading guilty and believed that he could continue to litigate
the pending motions to suppress.  However, at the evidentiary
hearing on his motion to withdraw his guilty plea, defendant did
not provide any testimony to substantiate this claim.  In
addition, Larson reiterated that it was his general practice to
review the terms of plea agreements with clients and that he
would never relate a condition or promise to a client that was
not reduced to writing and accepted by the court.

          Neither the text of the plea agreement nor defendant's
plea application contain any indication that defendant could
proceed with further pretrial litigation; instead, the text of
the plea agreement states that defendant "waives" the "right to
appeal any denial of pretrial motions" (Plea Agreement ¶ 9), and
his plea application states that he will have "no right to appeal
from an adverse judgment unless an upward departure is made from
the United States Sentencing Guidelines" (Plea Application ¶ 8).
During defendant's Rule 11 colloquy, Larson also expressly stated

1    in defendant's presence that "there are no outstanding
2    Constitutional issues, and we are both confident that any issue
3    that existed has been fully litigated." (Rule 11 Tr. 26:18-20.)

4         Defendant also claims that Larson had promised him that
5    the plea agreement guaranteed a sentence of five years.  As
6    discussed previously, however, testimony at the evidentiary
7    hearing and numerous entries in the record are inconsistent with
8    this claim.  Defendant's signed plea agreement and the Rule 11
9    colloquy each instructed that, as a result of defendant's guilty
10   plea, he faced two possible sentencing ranges, one spanning from
11   five to forty years and the other spanning from ten years to life
12   imprisonment. (<u>See</u> Plea Agreement ¶ 3; Rule 11 Tr. 23:12-24:1.)
13   Furthermore, in defendant's original motion to withdraw his
14   guilty plea filed on August 12, 2008, his handwritten allegations
15   belie his current claim that his attorney promised a five year
16   sentence; in that filing, defendant asserted, "The agreement was
17   'breeched' when deferent plead[ed] to a specific amount of drugs
18   that were confiscated.  The agreed total amount carried a term of
19   imprisonment for a term <u>between 5 to 40 years</u>.  Not 10 years to
20   life which is suggest[ed] in the PSI report." (Docket No. 1968
21   (emphasis added).)

22        When confronted with this record, defendant testified
23   at the evidentiary hearing that the transcript of his Rule 11
24   colloquy omits certain details and that he was only presented
25   with the signature page of his plea agreement to sign; the former
26   claim, however, is not entitled to credence, and the latter is
27   inconsistent with Larson's sworn description of his general
28   practice of reviewing plea agreements with clients.

At the evidentiary hearing, defendant further insisted that it would have been irrational to plead guilty absent the promise of a five-year sentence because there was no appreciable benefit to him by entering into the plea agreement.  The plea agreement, however, offered several significant advantages. First, defendant would receive a two-point reduction in the guidelines for acceptance of responsibility.  (<u>See</u> Plea Agreement ¶ 14.)  Larson also testified that the sentencing judge, Judge William Orrick, was likely to exercise some leniency if defendant pled guilty rather than proceeded to trial, a supposition that is corroborated by Judge Orrick's plea-application form.  (<u>See</u> Plea Application ¶ 13.)  Larson also testified that he had credibility with Judge Orrick and believed that he could persuasively argue for leniency if defendant were to plead guilty.  Finally, from both legal and practical perspectives, Larson reasonably believed that he could better argue issues relating to drug quantity and applicable sentencing guidelines if defendant pled guilty to 21 U.S.C. 841(a)(1) rather than after the Government had presented all of its evidence at a trial involving expansive drug-conspiracy charges.

IT IS THEREFORE ORDERED that defendant's motion to withdraw his guilty plea be, and the same hereby is, DENIED.

DATED:  June 1, 2009

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

17