UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR. 92-00001 WBS |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: MOTION TO SET ASIDE OR REMIT BOND FORFEITURE |
| DONELL HATCHER, | |
| Defendant. | |

----oo0oo----

The surety on defendant Donell Hatcher's bail bond, Loyce Hatcher, filed this motion through his attorney-in-fact, Montel Hatcher, to set aside the stipulation of bond forfeiture pursuant to Federal Rule of Criminal Procedure 46(f)(2) or in the alternative, to remit the cash bond of $125,000 pursuant to Rule 46(f)(4).

I.  Factual and Procedural Background

On October 23, 1992, defendant Donell Hatcher was released on a property bond of $150,000 posted by his father, Loyce Hatcher, and secured by his father's house.  (Mot. to Set

Aside Forfeiture 2; Opp. Mot. to Set Aside Ex. A.)  On September 30, 1993, defendant was believed to have violated the conditions of his pretrial release, and the United States moved to revoke his release.  (Mot. to Set Aside Forfeiture at 3; Docket No. 1320.)  A bench warrant was issued for his arrest on October 1, 1993.  (Mot. to Set Aside Forfeiture at 3.)  Defendant remained a fugitive until his arrest in 2006 in Alabama on narcotics charges. (Id.; see United States v. Hatcher, CR No. 03-00144 KOB RRA (N.D. Ala.).)

While defendant was a fugitive, Loyce Hatcher developed Alzheimer's disease and gave his other son, Montel Hatcher, a durable power-of-attorney to manage his affairs.  (Mot. to Set Aside Forfeiture at 3.)  Toward the end of 2007, the house used as security for the bond was threatened with foreclosure and the lien created a cloud upon the title.  (Id.)  To assist with the sale, on December 28, 2007, defendant's then-counsel stipulated with the United States to substitute a cash bond of $150,000 for the lien on Loyce Hatcher's house (now owned by Montel Hatcher). (Mot. to Set Aside Forfeiture 3; Opp. Mot. to Set Aside Forfeiture Ex. F.))  A new stipulation signed on February 21, 2008 reduced the bail to $125,000 in exchange for a reconveyance of the United States's security interest in the Loyce Hatcher home, and an agreement that the $125,000 bail amount was forfeited to the United States.  (Opp. Mot. to Set Aside Forfeiture Ex. G.)  An order to this effect was entered by the court on February 22, 2008.  (Id.)  Thereafter, the bond was forfeited and the funds conveyed to the Clerk's office.  (Id.)

On August 8, 2008, the defendant filed a pro se motion

2

seeking relief from forfeiture and a return of the bail.  (Opp. Mot. to Set Aside Forfeiture Ex. H.)  Now, Montel Hatcher, acting pursuant to his power-of-attorney for the surety on defendant's bond, Loyce Hatcher, seeks to set aside the bond forfeiture.

## II. Discussion

### A. Statute of Limitations on the Forfeiture

Under federal law, the United States' forfeiture action accrues and the six-year statute of limitations period begins to run when the bail bond agreement is breached. United States v. Toro, 981 F.2d 1045 (9th Cir. 1992); see 28 U.S.C. § 2415 (2006) ("[E]very action for money damages brought by the United States . . . which is founded upon any contract . . . shall be barred unless the complaint is filed within six years after the right of action accrues.").

In this case, the statute of limitations on the government's lien over the surety's house had run such that the government could no longer move for forfeiture.  The statute of limitations does not extinguish a debt but merely bars the remedy. McCormick v. Brown, 36 Cal. 180 (1868).  The government and defendant signed a stipulation providing that the bond would be reduced by $25,000 and would nonetheless be forfeited.  This in itself makes the stipulation a valid contract for consideration.  Therefore, unless there are valid grounds for rescission, as between defendant and the government, the stipulation is valid despite the fact that the statute of limitations on the government's forfeiture remedy had run.

///

///

B. <u>Whether the Stipulation Is Binding on the Surety</u>

The surety argues that the February 21, 2008 stipulation between the United States and defendant Hatcher declaring the bond forfeited is not binding on the surety because it was not a party to the stipulation. The stipulation provided that: "The sum of $125,000 shall be deemed full and complete forfeiture of said bond and defendant <u>and all sureties</u> hereby relinquish any further claim, right, or entitlement to said amount of $125,000." (Decl. Barton in Support of Mot. to Set Aside Forfeiture Ex. G) (emphasis added). The surety in this case, however, did not sign the stipulation; only the government and counsel for defendant Hatcher signed it. (<u>Id.</u>)

The United States argues that <u>United States v. Vera-Estrada</u>, 577 F.2d 598 (9th Cir. 1978), is controlling. In <u>Vera-Estrada</u>, the defendant failed to appear in District Court and his bail bond was ordered forfeited. The government noticed the sureties only when it moved for judgment on the forfeiture. The sureties in that case appealed, arguing that under the California Penal Code § 1305(a) their liability was conditional on the clerk's notifying them of the forfeiture within thirty days. The court held only that § 1305(a) was not an implied term of the bail bond contract and that notice is required only when the government moves for judgment on the forfeiture. <u>Id.</u> at 599-600. <u>Vera-Estrada</u> is silent as to the question here: whether a stipulation altering the amount of the bond and declaring forfeiture on the bond after the statute of limitations had passed binds a non-party surety.

Under general common law principles, judgment may not

4

be entered against one not a party to the action. <u>Valley Nat. Bank of Ariz. v. A.E. Rouse & Co.</u>, 121 F.3d 1332 (9th Cir. 1997). This principle protects the procedural due process rights of the unnamed party. <u>Id.</u> In certain circumstances, however, parties can bind non-parties by their contracts or judgments. The common law relationship of privity, for example, is a legal relationship "in which two parties have identical or transferred rights with respect to a particular legal interest." <u>Headwaters Inc. v. U.S. Forest Service</u>, 399 F.3d 1047 (9th Cir. 2005) (listing traditional privity relationships); <u>see also</u> <u>Richards v. Jefferson County, Ala.</u>, 517 U.S. 793, 798 (1996) ("[T]he term 'privity' is now used to describe various relationships between litigants that would not have come within the traditional definition of that term. . . . [I]n certain limited circumstances, a person, although not a party, has his interests adequately represented by someone with the same interests who is a party.") (quoting <u>Martin v. Wilks</u>, 490 U.S. 755, 762 n.2 (1989) (superceded by statute)) (internal quotations omitted).

   The relationships that are broader than traditional privity where parties can bind non-parties have been referred to as "virtual representation." <u>See</u> <u>Irwin v. Mascott</u>, 370 F.3d 924 (9th Cir. 2004). For a party to bind a non-party by virtual representation, there must be (1) a close relationship between the parties; (2) the non-party had substantial participation in or control in the process; and (3) the party's and non-party's interests were aligned and common, such that the party could adequately represent the non-party's interests. <u>Irwin</u>, 370 F.3d at 929-30.

1           Because the surety was not a party to the stipulation,
2  it can be bound to it only if he was "virtually represented" by
3  the defendant when the stipulation was signed.  Id.  Applying the
4  first factor, the court finds that defendant had a close
5  relationship with the surety.  The surety is the defendant's
6  father, and the surety's attorney-in-fact is the defendant's
7  brother.  Furthermore, the defendant was apparently living with
8  his father when he was originally released on bail in 1992.
9  (Opp. Mot. to Set Aside Forfeiture Ex. A.)  The first element of
10 the test-a close relationship between the parties-is clearly met.
11 See, e.g., Trevino v. Gates, 99 F.3d 911, 923-24 (9th Cir. 1996)
12 (grandchild-grandparent relationship supports collateral estoppel
13 on virtual representation theory).
14          However, the second element-substantial participation
15 or control in the process-is not so clearly present.  The
16 government points to the fact that the surety and his attorney-
17 in-fact at times paid for defendant's counsel, and that
18 defendant's counsel in Alabama and California attempted to
19 substitute a cash bond in place of the lien on the surety's home.
20 (Opp. Mot. to Set Aside Forfeiture 9; Docket No. 2024 ¶ 5.)
21 Defendant's counsel in Alabama sought to exonerate and cancel the
22 bond, an act that presumably would have been on behalf of the
23 surety and not the defendant.  (Opp. Mot. to Set Aside Forfeiture
24 9; Ex. D.)  The surety in this case also benefitted by having the
25 bond reduced $25,000 in the stipulation.
26          These facts, however, suggest at best that defendant
27 intended the surety to be a third-party beneficiary to any
28 stipulation reducing the bond.  The government has failed to

1  point to any facts that compel the conclusion that the surety was
2  participating in or controlling the stipulation negotiations with
3  the government.  While Montel Hatcher states that he had
4  previously paid defendant's Alabama and California counsel to
5  "attempt to get the lien removed" and "to get the government to
6  release the lien on the real property and reduce the amount of
7  the bond" (Decl. Montel Hatcher ¶ 6), neither of these efforts
8  speak directly to the stipulation at hand.  Furthermore, the
9  stipulation signed by defendant reconveyed the security interest
10 in Loyce Hatcher's home to the government.  (Opp. Mot. to Set
11 Aside Forfeiture Ex. G.)  Given that this was the outcome that
12 the surety had been attempting to avoid all along, Montel
13 Hatcher's statements cut against finding that the surety was
14 controlling or participating in the stipulation negotiation
15 process.

16         Finally, the third element-commonality of interests-is
17 clearly absent here.  The defendant in this case could not have
18 adequately represented the interests of the surety in his bond
19 negotiations with the government.  While defendant is the
20 surety's son, he fled while on bail and knowingly and willingly
21 subjected his father's house to forfeiture.  Additionally, the
22 stipulation was made at a time when the defendant was facing
23 sentencing on his prior narcotics convictions and possible
24 charges for fleeing on bail.  When defendant agreed to forfeit
25 $125,000 of the bond, he was motivated by a desire to placate and
26 appease the government in exchange for a favorable sentencing
27 recommendation or leniency.  The surety would have had no such
28 similar motive.  Agreeing to the stipulation would be one way for

the defendant to curry favor with the government.  This apparent conflict of interest itself is enough to find that the third prong of the test for virtual representation is not met.  The surety's interest was and remains avoiding the forfeiture of the bond.  While the defendant might have had good intentions when he stipulated to a reduced bail amount in exchange for the forfeiture, this does not equate to a common interest sufficient to bind the surety in contract.  Therefore, the surety is not bound by the provisions of the stipulation and it is unenforceable against him.

### C.   Rescission for Mutual Mistake

Alternatively, the court finds that the stipulation is voidable because it was based on a mutual mistake of law.  Under the general law of contracts, contracts premised on a mutual mistake of fact are voidable where the mistake concerns a basic assumption on which the contract was made and materially affects the agreement.  See Restatement 2d § 152.  In the Ninth Circuit, a mutual mistake of law can also excuse performance on a contract.  See Gayle Mfg. Co. v. Federal Sav. & Loan Ins. Corp., 910 F.2d 574, 582 (9th Cir. 1990) ("The law has long recognized that it is unjust to permit either party to a transaction, in which both are laboring under the same mistake, to take advantage of the other when the truth is known.") A mutual mistake renders a contract voidable on the theory that a material difference of understanding prevents the manifestation of mutual assent necessary to create a contract at all.  See Local Motion, Inc. v. Niescher, 105 F.3d 1278, 1280 (9th Cir. 1997).

The surety seeks to rescind the stipulation because it

was based on the mutual mistake that the government still had the right to seek forfeiture on the bond. As discussed above, the surety was not a party to the stipulation and it is not binding on him. Ordinarily, the surety would therefore lack standing to rescind the stipulation. At oral argument, however, counsel for defendant Donnell Hatcher joined in the surety's motion to rescind the stipulation on the ground of mutual mistake. Defendant, being a party to the stipulation, does have standing to rescind it on that ground.

The government argues that the mistake as to the legal effect of a statute of limitations was unilateral on the part of the defendant, and that there was no "mistake" on the part of the government at all. The court finds no reason to impute to the government the bad faith that would be inherent in knowingly prosecuting a bail forfeiture when it knew the statute of limitations had run. It seems to the court that only because the government and defendant were both mistaken as to the existence of the six-year statute of limitations did the parties enter into the stipulation. This mutual mistake reaches the very core of the contract; indeed, the stipulation would in all likelihood not exist if the parties had been aware of the statute of limitations. This is the very kind of situation that the doctrine of mutual mistake seeks to remedy by providing for rescission of the agreement by either party.

///
///
///
///

1      IT IS THEREFORE ORDERED that the surety's motion to set
2 aside the bond forfeiture be, and the same hereby is, GRANTED.
3 DATED:  October 26, 2009

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

10